1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11                          ----oo0oo----

12  HEIDI ANDERSON-BUTLER and        CIV. NO. 2:14-01921 WBS AC
    PAULA HAUG on behalf of
13  themselves and all others        MEMORANDUM AND ORDER RE: MOTION
    similarly situated,              FOR PRELIMINARY APPROVAL OF
14                                   CLASS ACTION SETTLEMENT
                  Plaintiffs,
15
         v.
16
    CHARMING CHARLIE INC., a
17  Delaware Corporation;
    CHARMING CHARLIE LLC, a
18  Delaware Limited Liability
    Company; and DOES 1 through
19  50, inclusive,

20
                  Defendants.
21

22                          ----oo0oo----

23
              Plaintiffs brought this putative class action against
24
    Charming Charlie, LLC,[1] alleging defendant illegally required
25
    _____
26       [1]   Plaintiffs originally named both Charming Charlie,
    Inc., and Charming Charlie LLC in error.  Charming Charlie, Inc.
27  no longer exists as a distinct entity because it converted to
    Charming Charlie LLC in December 2013.  (Def.'s Stmt. at 1
28  (Docket No. 13).)

                                  1

1    plaintiffs to provide personal information when making a credit

2    card purchase in violation of California Civil Code section

3    1747.08.  Presently before the court is plaintiffs' motion for

4    preliminary approval of the class action settlement.

5    I. <u>Factual and Procedural Background</u>

6          Charming Charlie is a retailer selling women's apparel

7    and accessories in stores across the country, including

8    California.  Plaintiffs Heidi Anderson-Butler and Paula Haug

9    visited Charming Charlie stores located in Chino Hills and

10    Folsom, California, respectively.  Upon attempting to pay for

11    items with their credit cards, a clerk told both women they were

12    required to provide personal information including their physical

13    address, email address, and phone number.  Plaintiffs provided

14    the information to the clerk.[2]  Defendant allegedly used the

15    collected information for direct marketing purposes.

16          Plaintiffs allege defendant violated the Song-Beverly

17    Credit Card Act, Cal. Civ. Code § 1747.08, which provides that a

18    corporation may not "request, or require as a condition to

19    accepting the credit card as payment in full or in part for goods

20    or services, the cardholder to provide personal identification

21    information, which . . . the corporation . . . causes to be

22    written, or otherwise records . . . ."  Plaintiffs brought this

23    lawsuit on behalf of a putative class of consumers in California

24    from whom defendant requested personal information during the

25    course of credit card transactions.  The case settled before the

26

27         [2]  Plaintiff Haug refused to provide her physical address
and provided only her telephone number and email address.

28 (Compl. ¶ 26 (Docket No. 1-2).)

1    parties filed any dispositive motions.  Plaintiffs now seek

2    preliminary approval of the parties' stipulated class-wide

3    settlement, pursuant to Federal Rule of Civil Procedure 23(e).

4    II. Discussion

5             Rule 23(e) provides that "[t]he claims, issues, or

6    defenses of a certified class may be settled . . . only with the

7    court's approval."  Fed. R. Civ. P. 23(e).  "Approval under 23(e)

8    involves a two-step process in which the Court first determines

9    whether a proposed class action settlement deserves preliminary

10   approval and then, after notice is given to class members,

11   whether final approval is warranted."  Nat'l Rural Telecomms.

12   Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)

13   (citing Manual for Complex Litig., Third, § 30.41 (1995)).

14            This Order is the first step in that process and

15   analyzes only whether the proposed class action settlement

16   deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.

17   Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010).  Preliminary approval

18   authorizes the parties to give notice to putative class members

19   of the settlement agreement and lays the groundwork for a future

20   fairness hearing, at which the court will hear objections to (1)

21   the treatment of this litigation as a class action and/or (2) the

22   terms of the settlement.  See id.; Diaz v. Trust Territory of

23   Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (stating that a

24   district court's obligation when considering dismissal or

25   compromise of a class action includes holding a hearing to

26   "inquire into the terms and circumstances of any dismissal or

27   compromise to ensure that it is not collusive or prejudicial").

28   The court will reach a final determination as to whether the

3

1 parties should be allowed to settle the class action on their

2 proposed terms after that hearing.

3       The Ninth Circuit has declared a strong judicial policy

4 favoring settlement of class actions. Class Plaintiffs v. City

5 of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless,

6 where, as here, "the parties reach a settlement agreement prior

7 to class certification, courts must peruse the proposed

8 compromise to ratify both [1] the propriety of the certification

9 and [2] the fairness of the settlement." Staton v. Boeing Co.,

10 327 F.3d 938, 952 (9th Cir. 2003).

11       The first part of this inquiry requires the court to

12 "pay 'undiluted, even heightened, attention' to class

13 certification requirements" because, unlike in a fully litigated

14 class action suit, the court "will lack the opportunity . . . to

15 adjust the class, informed by the proceedings as they unfold."

16 Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

17 Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

18 The parties cannot "agree to certify a class that clearly leaves

19 any one requirement unfulfilled," and consequently the court

20 cannot blindly rely on the fact that the parties have stipulated

21 that a class exists for purposes of settlement. See Windsor, 521

22 U.S. at 621-22 (stating that courts cannot fail to apply the

23 requirements of Rule 23(a) and (b)).

24       The second part of this inquiry obliges the court to

25 "carefully consider 'whether a proposed settlement is

26 fundamentally fair, adequate, and reasonable,' recognizing that

27 '[i]t is the settlement taken as a whole, rather than the

28 individual component parts, that must be examined for overall

fairness . . . .'" <u>Staton</u>, 327 F.3d at 952 (quoting <u>Hanlon</u>, 150 F.3d at 1026); <u>see also</u> Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

   A. <u>Class Certification</u>

   A class action will be certified only if it meets the four prerequisites identified in Rule 23(a) and additionally fits within one of the three subdivisions of Rule 23(b). <u>See</u> <u>Ontiveros v. Zamora</u>, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506, at *4 (E.D. Cal. July 7, 2014); Fed. R. Civ. P. 23(a)-(b). Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, <u>see</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979); <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class, <u>see</u> <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982); <u>E. Tex. Motor Freight Sys. v. Rodriguez</u>, 431 U.S. 395, 403-05 (1977).

   1. <u>Rule 23(a) Requirements</u>

   Rule 23(a) restricts class actions to cases where:

   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

   a. <u>Numerosity</u>

   Under the first requirement, "[a] proposed class of at least forty members presumptively satisfies the numerosity requirement." <u>Avilez v. Pinkerton Gov't Servs</u>., 286 F.R.D. 450,

456 (C.D. Cal. 2012); see also, e.g., Collins v. Cargill Meat

Solutions Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger,

J.) ("Courts have routinely found the numerosity requirement

satisfied when the class comprises 40 or more members."). The

proposed class, which the plaintiffs estimate will contain

approximately 200,000 members, (see Pls.' Mem. at 1 (Docket No.

11-1)), easily satisfies this requirement.

            b. Commonality

      Commonality requires that the class members' claims

"depend upon a common contention" that is "capable of classwide

resolution--which means that determination of its truth or

falsity will resolve an issue that is central to the validity of

each one of the claims in one stroke." Wal-Mart Stores, Inc. v.

Dukes, 131 S. Ct. 2541, 2550 (2011). "[A]ll questions of fact

and law need not be common to satisfy the rule," and the

"existence of shared legal issues with divergent factual

predicates is sufficient, as is a common core of salient facts

coupled with disparate legal remedies within the class." Hanlon,

150 F.3d at 1019.

      The proposed class includes "[a]ll persons who, between

July 9, 2013 and the date of entry of the Preliminary Approval

Order, engaged in a credit card transaction at a California

Charming Charlie Store and whose Personal Identification

Information was requested and recorded by Charming Charlie at the

Charming Charlie Store for purposes other than shipping, delivery

or special orders." (Pls.' Mem. at 1-2.) The class would be

comprised of individuals alleging facts similar to the named

plaintiffs, that a Charming Charlie clerk asked for personal

1   information in conjunction with a credit card transaction.  The

2   class members' claims depend on a common contention that

3   requesting and recording this information violated section

4   1747.08.  Lastly, the statutory damages could be resolved on a

5   class-wide basis.  See Cal. Civ. Code § 1747.08(e) (providing for

6   a civil penalty of no greater than $250 for the first violation

7   and $1,000 for subsequent violations).  The proposed class

8   therefore meets the commonality requirement.

9                    c. Typicality

10          Typicality requires that named plaintiffs have claims

11   "reasonably coextensive with those of absent class members," but

12   their claims do not have to be "substantially identical."

13   Hanlon, 150 F.3d at 1020.  The test for typicality "'is whether

14   other members have the same or similar injury, whether the action

15   is based on conduct which is not unique to the named plaintiffs,

16   and whether other class members have been injured by the same

17   course of conduct.'"  Hanon v. Dataproducts Corp., 976 F.2d 497,

18   508 (9th Cir. 1992) (citation omitted).

19          The putative class members allege a simple set of facts

20   that are similar to those alleged by the named plaintiffs.  The

21   class injury for all class members was being asked to provide

22   personal information in connection to a credit card transaction,

23   which was then recorded.  Such injury was caused by the same

24   conduct of the store clerk.  Plaintiffs seek the remedy of

25   statutory damages, which would presumably be the same award for

26   each individual injury.  (See Compl. at 10.)  While there could

27   conceivably be nuances with respect to a class member's

28   experience at a Charming Charlie store, class members' claims

                                    7

1  appear to be reasonably coextensive with those of the named

2  plaintiffs.  The proposed class therefore meets the typicality

3  requirement.

4          d. Adequacy of Representation

5          Finally, to resolve the question of adequacy, the court

6  must make two inquiries: "(1) do the named plaintiffs and their

7  counsel have any conflicts of interest with other class members

8  and (2) will the named plaintiffs and their counsel prosecute the

9  action vigorously on behalf of the class?"  Hanlon, 150 F.3d at

10 1020.  These questions involve consideration of a number of

11 factors, including "the qualifications of counsel for the

12 representatives, an absence of antagonism, a sharing of interests

13 between representatives and absentees, and the unlikelihood that

14 the suit is collusive."  Brown v. Ticor Title Ins., 982 F.2d 386,

15 390 (9th Cir. 1992).

16         The named plaintiffs' interests are generally aligned

17 with the putative class members.  The putative class members

18 suffered a similar injury as the named plaintiffs, and the

19 definition of the class is narrowly tailored and aligns with the

20 named plaintiffs' interests.  See Windsor, 521 U.S. at 625-26

21 ("[A] class representative must be part of the class and possess

22 the same interest and suffer the same injury as the class

23 members."); Murillo, 266 F.R.D. at 476 (finding that an

24 appropriate class definition ensured that "the potential for

25 conflicting interests will remain low while the likelihood of

26 shared interests remains high").

27         The settlement agreement provides for an incentive

28 award of $5,000 to each of the named plaintiffs, to be paid

1  separate from and in addition to the class recovery of $350,000

2  in vouchers.  Although the Ninth Circuit has specifically

3  approved the award of "reasonable incentive payments" to named

4  plaintiffs, the use of an incentive award nonetheless raises the

5  possibility that plaintiffs' interest in receiving that award

6  will cause their interests to diverge from the class's interest

7  in a fair settlement.  Staton, 327 F.3d at 977-78 (declining to

8  approve a settlement agreement where size of incentive award

9  suggested that named plaintiffs were "more concerned with

10 maximizing [their own] incentives than with judging the adequacy

11 of the settlement as it applies to class members at large").  As

12 a result, the court must "scrutinize carefully the awards so that

13 they do not undermine the adequacy of the class representatives."

14 Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th

15 Cir. 2013).

16       An incentive award of $5,000 to each of the named

17 plaintiffs does not on its face appear to create a conflict of

18 interest.  "In general, courts have found that $5,000 incentive

19 payments are reasonable."  Hopson v. Hanesbrands Inc., Civ. No.

20 08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)

21 (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th

22 Cir. 2000); In re SmithKline Beckman Corp., 751 F. Supp. 525, 535

23 (E.D. Pa. 1990); Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D.

24 Cal. 2008)).

25       While the proposed award amount tends to be viewed as

26 reasonable in the Ninth Circuit, it is disproportionate to the

27 recovery of other class members.  See, e.g., Monterrubio v. Best

28 Buy Stores, L.P., 291 F.R.D. 443, 463 (E.D. Cal. 2013) (England,

1  J.) (finding $7,500 incentive award unreasonable when average

2  class member would receive $65.79 and reducing the award to

3  $2,500).  The settlement agreement provides that if there are

4  17,500 or fewer authorized claimants, then each will receive a

5  $20 store voucher.  If there are greater than 17,500 claimants,

6  the value of each voucher shall be reduced pro rata.  Plaintiffs

7  represent that their discovery and investigation have revealed

8  that the class is comprised of approximately 200,000 individuals.

9  (Pls.' Mem. at 1.)  If all of the estimated 200,000 class members

10  participate, then each member will recover a $1.75 voucher.

11       Plaintiffs' counsel anticipates that only 5 to 10% of

12  class members will actually return the claim form to the Claim

13  Administrator.  (Pls.' Mem. at 7.)  The court questions why the

14  average recovery should be based on such a small portion of the

15  putative class.  Plaintiffs have represented for the purpose of

16  class certification that the class contains 200,000 members

17  eligible to recover, which they state is an informed estimate

18  based on discovery and investigation.  (Id. at 1.)  At the

19  hearing, plaintiffs' counsel was unable to explain to the court's

20  satisfaction why, given his experience with the method of notice

21  used in this case, such a small proportion of class members tend

22  to file claims.  The court will therefore assume at this

23  preliminary stage that the expected recovery amount per class

24  member is a $1.75 voucher.

25       In their moving papers, plaintiffs do not provide a

26  justification for such a comparatively high incentive award of

27  $5,000 to each of the named plaintiffs.  The settlement agreement

28  vaguely notes that the awards are for financial risk and the time

1   and effort spent on the litigation, without any further

2   explanation.  At the hearing plaintiffs' counsel failed to

3   provide the court with further guidance.  While the incentive

4   award is not dispositive of the named plaintiffs' adequacy of

5   representation, the court will further explore the

6   appropriateness of the award at the final fairness hearing.  See

7   Alberto, 252 F.R.D. at 662-63, 669 (certifying plaintiff as an

8   adequate class representative "pending the introduction at the

9   final fairness hearing of evidence in support of counsel's

10  findings").

11       Accordingly, the court preliminarily finds that the

12  proposed incentive award does not render plaintiffs inadequate

13  representatives of the class.  On or before the date of the

14  fairness hearing, however, the parties shall present or be

15  prepared to present evidence of the named plaintiffs' asserted

16  "financial risk" and of named plaintiffs' efforts taken as class

17  representatives, such as their hours of service or an itemized

18  list of their activities, to justify the discrepancy between

19  their award and those of the absent class members.[3]

20       The second prong of the adequacy inquiry examines the

21  vigor with which the named plaintiff and her counsel have pursued

22  the common claims.  "Although there are no fixed standards by

23  which 'vigor' can be assayed, considerations include competency

24  of counsel and, in the context of a settlement-only class, an

25  ───────────────
        [3]  Relevant factors for the evaluation of the amount of
26  incentive payments made to the named plaintiff include "the
    actions the plaintiff has taken to protect the interests of the
27  class, the degree to which the class has benefitted from those
    actions, . . . and reasonabl[e] fear[s of] workplace
28  retaliation."  Staton, 327 F.3d at 977 (citation omitted).

11

1   assessment of the rationale for not pursuing further litigation."

2   Hanlon, 150 F.3d at 1021.

3         Plaintiffs' counsel states he has represented millions

4   of consumers in numerous class actions asserting violations of

5   California's consumer protection statutes.  (Pls.' Mem. at 7.)

6   In the last decade, counsel has brought twenty class actions

7   under the Song-Beverly Act to judgment.  (Id.)  The court finds

8   no reason to doubt that plaintiffs' attorney is well qualified to

9   conduct the proposed litigation and assess the value of the

10  settlement.

11        Plaintiffs' counsel asserts that to arrive at his

12  decision to settle the action, he seriously considered the risks

13  of further litigation.  Counsel recognized that there are

14  exceptions to section 1747.08 that could preclude recovery of the

15  full permissible civil penalty, and class certification would be

16  challenged.  (Pls.' Mem. at 5.)  Counsel weighed these risks

17  along with the strength of the case to arrive at the decision to

18  settle.  (Id. at 4-5.)  At this stage, the court agrees that

19  these factors weighed in favor of settlement.  The named

20  plaintiffs and their counsel appear to be prepared to prosecute

21  the action vigorously on behalf of the class.

22        2. Rule 23(b)

23        An action that meets all the prerequisites of Rule

24  23(a) may only be certified as a class action if it also

25  satisfies the requirements of one of the three subdivisions of

26  Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

27  Cir. 2013).  Plaintiffs presumably seek certification under Rule

28  23(b)(3), which provides that a class action may be maintained

only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### a. Predominance

"Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues."  Murillo, 266 F.R.D. at 476 (citing Hanlon, 150 F.3d at 1022); see also Windsor, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

The class members' contentions appear to be similar, if not identical.  Again, although some nuances among the class members' allegations could exist, there is no indication that those variations are "sufficiently substantive to predominate over the shared claims."  See id.  For instance, one of the named plaintiffs refused to give the clerk her home address but still provided other information.  The statute, however, requires only that personal information be requested and then recorded for a violation to occur.  Whether one plaintiff provided a telephone number and another a home address is not material to the shared claims.  Accordingly, the court finds that common questions of law and fact predominate over the class members' claims.

### b. Superiority

Rule 23(b)(3) also requires a showing that "a class action is superior to other available methods for fairly and

1   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)

2   (3).  It sets forth four non-exhaustive factors to consider in

3   making this determination:

4       (A) the class members' interests in individually
        controlling the prosecution or defense of separate
5       actions; (B) the extent and nature of any litigation
        concerning the controversy already begun by or against
6       class members; (C) the desirability or undesirability
        of concentrating the litigation of the claims in the
7       particular forum; and (D) the likely difficulties in
        managing a class action.
8

9   Id.  The parties settled this action prior to certification,

10  making factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D.

11  at 477 (citing Windsor, 521 U.S. at 620).  Section 1747.08 limits

12  an individual's recovery of statutory civil penalties to $250 for

13  the first violation, see Cal. Civ. Code § 1747.08(e), so most

14  class members' recovery would be relatively small, and they might

15  have little interest in controlling the prosecution of separate

16  actions.  The court is also unaware of any concurrent litigation

17  already begun by class members regarding 1747.08 violations at

18  Charming Charlie stores.  Objectors at the fairness hearing may

19  reveal otherwise.  See Alberto, 252 F.R.D. at 664.  At this

20  stage, the class action device appears to be the superior method

21  for adjudicating this controversy.

22              3. Rule 23(c)(2) Notice Requirements

23        If the court certifies a class under Rule 23(b)(3), it

24  "must direct to class members the best notice that is practicable

25  under the circumstances, including individual notice to all

26  members who can be identified through reasonable effort."  Fed.

27  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

28

                                14

1  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

2  651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

3  417 U.S. 156, 172–77 (1974)).  Although that notice must be

4  "reasonably certain to inform the absent members of the plaintiff

5  class," actual notice is not required.  Silber v. Mabon, 18 F.3d

6  1449, 1454 (9th Cir. 1994) (citation omitted).

7       The settlement agreement provides that the Claims

8  Administrator will provide notice to the class using several

9  methods: (1) via a website displaying full notice of the

10 settlement, the claim form, the settlement agreement, and other

11 court filings; (2) by email, to class members for whom defendant

12 collected a valid email address; (3) by U.S. mail, to class

13 members for whom defendant collected a valid mailing address; and

14 (4) by displaying a sign in all of California Charming Charlie

15 stores in a location visible to customers.  (See Lindsay Decl.

16 Ex. 1 ("Settlement Agreement") at 9 (Docket No. 11-3).)  To be

17 eligible to receive a voucher, class members must accurately

18 complete and submit a claim form to the Claims Administrator by

19 mail or e-mail within forty-five calendar days after the notice

20 period has closed.  The court is satisfied that this system of

21 providing notice is reasonably calculated to provide notice to

22 class members and is the best form of notice available under the

23 circumstances.

24      The parties supplied the full "Notice of Class Action

25 and Proposed Settlement," (Lindsay Decl. Ex. B), which will be

26 available on the settlement website.  The full notice explains

27 the proceedings; defines the scope of the class; informs the

28 class member of the claim form requirement and the binding effect

1    of the class action; describes the procedure for opting out and

2    objecting; and provides the time and date of the fairness

3    hearing.  The content of the full notice therefore satisfies Rule

4    23(c)(2)(B).  See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill

5    Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)

6    ("Notice is satisfactory if it 'generally describes the terms of

7    the settlement in sufficient detail to alert those with adverse

8    viewpoints to investigate and to come forward and be heard.'"

9    (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352

10   (9th Cir. 1980)).

11          B. Preliminary Settlement Approval

12          After determining that the proposed class satisfies the

13   requirements of Rule 23, the court must determine whether the

14   terms of the parties' settlement appear fair, adequate, and

15   reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at

16   1026.  This process requires the court to "balance a number of

17   factors," including:

18       the strength of the plaintiff's case; the risk,
         expense, complexity, and likely duration of further
19       litigation; the risk of maintaining class action
         status throughout the trial; the amount offered in
20       settlement; the extent of discovery completed and the
         stage of the proceedings; the experience and views of
21       counsel; the presence of a governmental participant;
         and the reaction of the class members to the proposed
22       settlement.

23

24   Hanlon, 150 F.3d at 1026.  Many of these factors cannot be

25   considered until the final fairness hearing, so the court need

26   only conduct a preliminary review at this time to resolve any

27   "glaring deficiencies" in the settlement agreement before

28   authorizing notice to class members.  Ontiveros, 2014 WL 3057506,

1   at *12 (citing <u>Murillo</u>, 266 F.R.D. at 478).

2           1. <u>Terms of the Settlement Agreement</u>

3   (1)  **Settlement Class:**  All persons who, between July 9, 2013

4         and the date of entry of the Preliminary Approval Order,

5         engaged in a credit card transaction at a California

6         Charming Charlie Store and whose personal identification

7         information was requested and recorded by Charming

8         Charlie and the Charming Charlie Store for purposes other

9         than shipping, delivery, or special orders.  (Pls.' Mem.

10        at 2.)

11   (2)  **Notice:**  Within thirty days of the court's granting

12         preliminary approval, the Claims Administrator will

13         provide notice to class members using the methods

14         detailed above, all of which will direct class members to

15         the class settlement website for further information.

16         The class settlement website will be active for a minimum

17         of forty-five days.  (Settlement Agreement ¶ 3.3.)

18   (3)  **Opt-out Procedure:**  To opt out of the settlement, a class

19         member must, within forty-five after the last day for

20         notice to be provided, submit by U.S. mail a letter or

21         postcard addressed to the Claims Administrator indicating

22         (a) the name and case number of the action; (b) the full

23         name, address, and telephone number of the person

24         requesting exclusion; and (c) a statement that he/she

25         does not wish to participate in the Settlement.  If more

26         than 200 class members request exclusion, then Charming

27         Charlie may elect to terminate the settlement agreement.

28         (<u>Id.</u> ¶ 3.10.)

1    (4)   **Objections to Settlement:**  Any class member who has not

2         submitted a timely written exclusion request and who

3         wishes to object to the fairness, reasonableness, or

4         adequacy of the settlement must deliver written

5         objections to class counsel and defendant's counsel, and

6         must file such objection with the court, no later than

7         forty-five calendar days after the last day for notice to

8         be provided.  Written objections must include identifying

9         information, a statement of each objection, and a written

10        brief detailing legal and factual support the objector

11        wishes to bring to the court's attention.  A class member

12        who has objected in writing has the option of appearing

13        at the fairness hearing in person or through counsel.

14        However, a class member intending to object at the

15        hearing must file with the court a "Notice of Intention

16        to Appear" no later than forty-five calendar days after

17        the last day for notice to be provided.  (Id. ¶ 3.9.)

18   (5)   **Settlement Amount:**  Defendant agrees to comply with

19        section 1747.08 in its California stores, although the

20        agreement does not require defendant to notify plaintiffs

21        of changes to its policies, practices, and procedures.

22        In addition, defendant will pay up to $350,000 in the

23        form of store vouchers to class members valid for six

24        months after issuance and redeemable for in-store

25        purchases of merchandise at Charming Charlie stores.  The

26        amount of each voucher will depend on the number of class

27        members who return the claim form.  If there are 17,500

28        claimants, each will receive a $20 voucher.  The

18

1      remainder will be redistributed as "remainder vouchers."

2      If there are greater than 17,500 claimants, the value of

3      each voucher shall be reduced pro rata.  For example, if

4      there are 20,000 claimants, each will receive a $17.50

5      voucher.  (Id. ¶¶ 2.1-2.2.)

6   (6)  **Attorney's Fees, Costs, and Plaintiffs' Incentive Award:**

7      Plaintiffs will apply to the court for an award of

8      attorney's fees and costs of $140,000 total to be paid

9      separate and apart from the award to the class.

10     Defendant agrees not to oppose class counsel's

11     application.  Plaintiffs also request, and defendant does

12     not oppose, an incentive award of $5,000 to each of the

13     named plaintiffs to be paid separate and apart from the

14     award to the class.  (Id. ¶ 2.4.)

15  (7)  **Release:**  Class members who participate in the settlement

16     who have not timely opted out agree to release from

17     claims arising out of acts, omissions, or other conduct

18     that could have been alleged or otherwise referred to in

19     the action, including but not limited to any and all

20     violations of California Civil Code Section 1747.8.

21          2. Preliminary Determination of Adequacy

22          At the preliminary stage, "the court need only

23   'determine whether the proposed settlement is within the range of

24   possible approval.'"  Murillo, 266 F.R.D. at 479 (quoting

25   Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

26   This generally requires consideration of "whether the proposed

27   settlement discloses grounds to doubt its fairness or other

28   obvious deficiencies, such as unduly preferential treatment of

1   class representatives or segments of the class, or excessive

2   compensation of attorneys."  Id. (quoting W. v. Circle K Stores,

3   Inc., Civ. No. 04-0438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D.

4   Cal. June 13, 2006)).  Courts often begin by examining the

5   process that led to the settlement's terms to ensure that those

6   terms are "the result of vigorous, arms-length bargaining" and

7   then turn to the substantive terms of the agreement.  See, e.g.,

8   West, 2006 WL 1652598, at *11-12; In re Tableware Antitrust

9   Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)

10  ("[P]reliminary approval of a settlement has both a procedural

11  and a substantive component.").

12              a. Negotiation of the Settlement Agreement

13          Prior to settling, the parties engaged in some formal

14  discovery, (Lindsay Decl. ¶ 3), which presumably informed the

15  parties' decision to settle.  The parties represent that the

16  settlement is the result of arms-length settlement negotiations,

17  including a full day of mediation before a former San Diego

18  superior court judge with significant experience in consumer

19  class actions.  (Id.; Def.'s Stmt. at 3 (Docket No. 13)); see La

20  Fleur v. Med. Mgmt. Int'l, Inc., Civ. No. 5:13-00398, 2014 WL

21  2967475, at *4 (N.D. Cal. June 25, 2014) ("Settlements reached

22  with the help of a mediator are likely non-collusive.").

23  Plaintiffs' counsel state that the settlement was reached after

24  "strenuous advocacy of the litigation and extensive

25  negotiations." (Lindsay Decl. ¶ 5.)  He declares that both

26  plaintiffs and he took into account the uncertain outcome and

27  risks of litigation, particularly the delay often inherent in

28  class actions.  (Id. ¶ 4.)  In light of these considerations, the

1  court finds no reason to doubt the parties' representations that

2  the settlement was the result of vigorous, arms-length

3  bargaining.

4              b. Amount Recovered and Distribution

5          In determining whether a settlement agreement is

6  substantively fair to the class, the court must balance the value

7  of expected recovery against the value of the settlement offer.

8  See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve

9  consideration of the uncertainty class members would face if the

10  case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at

11  *14.

12          Section 1747.08 provides that "[a]ny person who

13  violates this section shall be subject to a civil penalty not to

14  exceed two hundred fifty dollars ($250) for the first violation

15  and one thousand dollars ($1,000) for each subsequent violation .

16  . . ."  Cal. Civ. Code § 1747.08(e).  Assuming that plaintiffs'

17  estimate is correct and the class is comprised of 200,000 members

18  who can prove one-time-only violations, then prevailing at trial

19  would lead to a recovery of $250 per class member, or $50

20  million.

21          The expected recovery as a result of the settlement is

22  a voucher with the maximum value of $20, redeemable at a Charming

23  Charlie retail establishment in California.  Individual recovery

24  will be reduced pro rata if greater than 17,500 class members

25  submit claims.  Again, plaintiffs state that discovery revealed

26  the numbers of class members is approximately 200,000.  (Pls.'

27  Mem. at 1.)  If all 200,000 proposed class members submit claims,

28  then individual recovery will be $1.75.  The contrast between the

21

value of expected recovery and the value of the settlement offer is stark.

Even if fewer than 200,000 class members submit claim forms, and individual recovery is higher than $1.75, there are concerns regarding the adequacy of the settlement.  This settlement is technically opt out, in that a class member must affirmatively opt out of the class or else they will be bound by judgment.  The settlement agreement provides that a class member who fails to timely opt out automatically releases defendant from their claims under section 1747.08 or any claims arising from conduct that could have been alleged or referred to in the Complaint.  (settlement agreement ¶ 4.4.)  A class member must also, however, take the affirmative step of submitting a claim form to recover a voucher.  If, as plaintiff's counsel projects, only 5 to 10% of class members return claim forms, 90% of class members, upon taking no action, will opt in by default and release defendant but get no recovery simply because they fail to timely return the claim form.

There are some uncertainties in this litigation. Firstly, it appears that under section 1747.08, no civil penalty shall be assessed if the defendant can show by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error.  Cal. Civ. Code § 1747.08(e).  Courts have also held that section 1747.08 is violated "only if the request [for personal information] is made under circumstances in which the customer could reasonably understand that the email address was required to process the credit card transaction . . . ."  Harold v. Levi Strauss & Co., 236 Cal. App. 4th 1259, 1268

1    (1st Dist. 2015).  Under this view, plaintiffs prevail only if

2    they reasonably believed that payment by credit card was

3    conditioned on providing personal information.  Moreover,

4    plaintiffs' counsel notes broadly that "certifying a class is

5    risky," that "trial would likely consume several weeks with

6    uncertain results," and that the actual penalty awarded "could be

7    very small under certain circumstances," without much further

8    elaboration. (See Pls.' Mem. at 5.)

9          In light of these albeit unelaborated uncertainties,

10   the court will grant preliminary approval to the settlement

11   because it is within the range of possible approval.  Murillo,

12   266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d 616, 621

13   n.3 (7th Cir. 1982)).  However, plaintiffs' counsel should be

14   prepared to explain to the court, either before or at the

15   fairness hearing, why the settlement is adequate given the stark

16   disparity between the settlement amount and the apparent value of

17   the case.  In particular, counsel should be prepared to explain

18   to the court all risks and uncertainties with specificity, as

19   well as an explanation for why the civil penalty awarded at trial

20   would likely be "very small" under these circumstances, as

21   plaintiffs vaguely suggested.

22               c. Attorney's Fees

23          If a negotiated class action settlement includes an

24   award of attorneys' fees, that fee award must be evaluated in the

25   overall context of the settlement.  Knisley v. Network Assocs.,

26   312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at

27   455.  The court "ha[s] an independent obligation to ensure that

28   the award, like the settlement itself, is reasonable, even if the

1  parties have already agreed to an amount." In re Bluetooth

2  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

3        The settlement agreement provides that plaintiffs'

4  counsel will apply to the court for a fee award of up to

5  $140,000, to be paid by defendant separate and apart from the

6  recovery of the class.  Defendant has agreed not to oppose this

7  award.

8        In deciding the attorney's fees motion, the court will

9  have the opportunity to assess whether the requested fee award is

10 reasonable, by multiplying a reasonable hourly rate by the number

11 of hours counsel reasonably expended.  See Van Gerwen v. Gurantee

12 Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).   As part of

13 this lodestar calculation, the court may take into account

14 factors such as the "degree of success" or "results obtained" by

15 plaintiff's counsel.  See Cunningham v. County of Los Angeles,

16 879 F.2d 481, 488 (9th Cir. 1988).   If the court, in ruling on

17 the fees motion, finds that the amount of the settlement warrants

18 a fee award at a rate lower than what plaintiffs' counsel

19 requested, then it will reduce the award accordingly.  The court

20 will therefore not evaluate the fee award at length here in

21 considering whether the settlement is adequate.

22       IT IS THEREFORE ORDERED that plaintiffs' motion for

23 preliminary certification of a conditional settlement class and

24 preliminary approval of the class action settlement be, and the

25 same hereby is, GRANTED.

26       IT IS FURTHER ORDERED that:

27       (1) Defendant shall notify class members of the

28 settlement in the manner specified under section 3.3 of the

1    settlement agreement;

2            (2) Class members who want to receive a voucher under

3    the settlement agreement must accurately complete and deliver a

4    Claim Form to the Claims Administrator no later than forty-five

5    (45) calendar days after the last day for notice to be provided

6    under section 3.3(b) and (c) of the settlement agreement;

7            (3) Class members who have not submitted a timely

8    written exclusion request and who want to object to the

9    settlement agreement must deliver written objections to class

10   counsel and Charming Charlie's counsel, and must file such

11   objection with the Court, no later than forty-five (45) calendar

12   days after the last day for notice to be provided under Section

13   3.3(b) and (c) of the settlement agreement.  The delivery date is

14   deemed to be the date the objection is deposited in the U.S. Mail

15   as evidenced by the postmark.  The objection must include: (a)

16   the name and case number of the Action "Anderson-Butler v.

17   Charming Charlie, Inc., Case No. 14-cv-01921-WBS-AC"; (b) the

18   full name, address, and telephone number of the person objecting;

19   (c) the words "Notice of Objection" or "Formal Objection"; and

20   (d) in clear and concise terms, the legal and factual arguments

21   supporting the objection, including an attestation under the

22   penalty of perjury of facts demonstrating that the person

23   objecting is a class member.  Any class member who files and

24   serves a written objection, as described in this paragraph, may

25   appear at the fairness hearing, either in person or through

26   personal counsel hired at the class member's expense, to object

27   to the settlement agreement.  Class members, or their attorneys,

28   intending to make an appearance at the fairness hearing, however,

1  must also deliver to class counsel and Charming Charlie's

2  counsel, and file with the court, no later than forty-five (45)

3  calendar days after the last day for notice to be provided under

4  Section 3.3(b) and (c) of the settlement agreement, a Notice of

5  Intention to Appear.  Only class members who file and serve

6  timely Notices of Intention to Appear may speak at the fairness

7  hearing.  The objection will not be valid if it only objects to

8  the lawsuit's appropriateness or merits.

9          (4) Class members who fail to object to the settlement

10  agreement in the manner specified above will: (1) be deemed to

11  have waived their right to object to the settlement agreement;

12  (2) be foreclosed from objecting (whether by a subsequent

13  objection, intervention, appeal, or any other process) to the

14  settlement agreement; and (3) not be entitled to speak at the

15  fairness hearing.

16          (5) Class members who want to be excluded from the

17  settlement must send a letter or postcard to the Claims

18  Administrator stating: (a) the name and case number of the Action

19  "Anderson-Butler v. Charming Charlie, Inc., Case No. 14-cv-01921-

20  WBS-AC"; (b) the full name, address, email address, and telephone

21  number of the person requesting exclusion; and (c) a statement

22  that the person does not wish to participate in the Settlement,

23  postmarked no later than forty-five (45) calendar days after the

24  last day for notice to be provided under Section 3.3(b) and (c)

25  of the settlement agreement.

26          (6) The class is provisionally certified as a class of

27  all persons who, between July 9, 2013 and the date of entry of

28  this Order, engaged in a credit card transaction at a California

26

1  Charming Charlie Store and whose personal identification

2  information was requested and recorded by Charming Charlie at the

3  Charming Charlie store for purposes other than shipping, delivery

4  or special orders.  Also excluded from the class are defendant's

5  counsel, defendant's officers and directors, and the judge

6  presiding over the Action.

7  (7) Plaintiffs Heidi Anderson-Butler and Paula Haug are

8  conditionally certified as the class representatives to implement

9  the Parties' settlement in accordance with the settlement

10  agreement.  The law firm of Lindsay Law Corporation, through

11  James M. Lindsay, Esq., is conditionally appointed as class

12  counsel.  Plaintiffs and Lindsay Law Corporation must fairly and

13  adequately protect the Class's interests.

14  (8) If the settlement agreement terminates for any

15  reason, the following will occur: (a) Class certification will be

16  automatically vacated; (b) Plaintiffs will stop functioning as

17  class representatives; and (c) this action will revert to its

18  previous status in all respects as it existed immediately before

19  the parties executed the settlement agreement.

20  (9) All discovery and pretrial proceedings and

21  deadlines, are stayed and suspended until further notice from the

22  court, except for such actions as are necessary to implement the

23  settlement agreement and this Order.

24  (10) The fairness hearing is set for November 2, 2015,

25  at 2:00 p.m., in courtroom 5, to determine whether the settlement

26  agreement should be finally approved as fair, reasonable, and

27  adequate.

28

27

1    (11) Based on the date this Order is signed and the

2  date of the fairness hearing, the following are the certain

3  associated dates in this settlement:

4         (a) Defendant shall send email and U.S. mail

5  notice is 30 days after entry of this Order;

6         (b) Pursuant to Local Rule 293, plaintiffs shall

7  file a motion for attorney's fees no later than 28 days prior to

8  the final fairness hearing;

9         (c) The last day for class members to file a

10 claim, request exclusion, or object to the settlement is 75 days

11 after entry of this Order;

12        (d) The parties shall file briefs in support of

13 the final approval of the settlement no later than 14 days before

14 the fairness hearing.

15        (12) In the case that the fairness hearing be

16 postponed, adjourned, or continued, the updated hearing date

17 shall be posted on the settlement website.

18 Dated:   July 29, 2015

19                              _____

20                              WILLIAM B. SHUBB
                                UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

28