1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                         ----oo0oo----

11

12  HEIDI ANDERSON-BUTLER and          CIV. NO. 2:14-01921 WBS AC
    PAULA HAUG on behalf of
13  themselves and all others          MEMORANDUM AND ORDER RE: MOTION
    similarly situated,                FOR FINAL APPROVAL OF CLASS
14                                      ACTION SETTLEMENT
              Plaintiffs,
15
         v.
16
    CHARMING CHARLIE INC., a
17  Delaware Corporation;
    CHARMING CHARLIE LLC, a
18  Delaware Limited Liability
    Company; and DOES 1 through
19  50, inclusive,
20
              Defendants.
21

22                       ----oo0oo----

23
              Plaintiffs brought this putative class action against
24
    Charming Charlie, LLC,[1] alleging defendant required plaintiffs to
25
    _____
26       [1]   Plaintiffs originally named both Charming Charlie, Inc.
    and Charming Charlie LLC in error.  Charming Charlie, Inc. no
27  longer exists as a distinct entity because it converted to
    Charming Charlie LLC in December 2013.  (Def.'s Stmt. at 1
28  (Docket No. 13).)

                               1

1  provide personal information when making a credit card purchase
2  in violation of California Civil Code section 1747.08.  Presently
3  before the court is plaintiffs' motion for final approval of the
4  class action settlement.

5  I. Factual and Procedural Background

6        Charming Charlie is a retailer selling women's apparel
7  and accessories in stores across the country, including
8  California.  Plaintiffs Heidi Anderson-Butler and Paula Haug
9  visited Charming Charlie stores located in Chino Hills and
10 Folsom, California, respectively.  Upon attempting to pay for
11 items with their credit cards, a clerk told both women they were
12 required to provide personal information including their physical
13 address, email address, and phone number.  Plaintiffs provided
14 the information to the clerk.[2]  Defendant allegedly used the
15 collected information for direct marketing purposes.

16       Plaintiffs allege defendant violated the Song-Beverly
17 Credit Card Act, Cal. Civ. Code § 1747.08, which provides that a
18 corporation may not "request, or require as a condition to
19 accepting the credit card as payment in full or in part for goods
20 or services, the cardholder to provide personal identification
21 information, which . . . the corporation . . . causes to be
22 written, or otherwise records . . . ."  Plaintiffs brought this
23 lawsuit on behalf of a putative class of consumers in California
24 from whom defendant requested personal information during the
25 course of credit card transactions.  The case settled before the

26

27       [2]  Plaintiff Haug refused to provide her physical address
    and provided only her telephone number and email address.
28 (Compl. ¶ 26 (Docket No. 1-2).)

1  parties filed any dispositive motions.

2        Plaintiffs filed an unopposed motion for preliminary

3  approval of class action settlement on June 18, 2015 and the

4  court granted preliminary approval on July 29, 2015. (Docket No.

5  15.) Plaintiffs now seek final approval of the parties'

6  stipulated class-wide settlement pursuant to Federal Rule of

7  Civil Procedure 23(e). Defendant does not oppose plaintiffs'

8  motion for final approval.

9  II. Discussion

10       Rule 23(e) provides that "[t]he claims, issues, or

11 defenses of a certified class may be settled . . . only with the

12 court's approval." Fed. R. Civ. P. 23(e). "Approval under 23(e)

13 involves a two-step process in which the Court first determines

14 whether a proposed class action settlement deserves preliminary

15 approval and then, after notice is given to class members,

16 whether final approval is warranted." Nat'l Rural Telecomms.

17 Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)

18 (citing Manual for Complex Litig., Third, § 30.41 (1995)).

19       The Ninth Circuit has declared a strong judicial policy

20 favoring settlement of class actions. Class Plaintiffs v. City

21 of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless,

22 where, as here, "the parties reach a settlement agreement prior

23 to class certification, courts must peruse the proposed

24 compromise to ratify both the propriety of the certification and

25 the fairness of the settlement." Staton v. Boeing Co., 327 F.3d

26 938, 952 (9th Cir. 2003).

27    A. Class Certification

28       A class action will be certified only if it meets the

3

1  four prerequisites identified in Rule 23(a) and additionally fits

2  within one of the three subdivisions of Rule 23(b).  See

3  Ontiveros v. Zamora, Civ. No. 2:08-567 WBS DAD, 2014 WL 3057506,

4  at *4 (E.D. Cal. July 7, 2014); Fed. R. Civ. P. 23(a)-(b).

5  Although a district court has discretion in determining whether

6  the moving party has satisfied each Rule 23 requirement, see

7  Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v.

8  Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must

9  conduct a rigorous inquiry before certifying a class, see Gen.

10  Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex.

11  Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403-05 (1977).

12          1. Rule 23(a) Requirements

13       Rule 23(a) restricts class actions to cases where:

14      (1) the class is so numerous that joinder of all
15  members is impracticable; (2) there are questions of
    law or fact common to the class; (3) the claims or
16  defenses of the representative parties are typical of
    the claims or defenses of the class; and (4) the
17  representative parties will fairly and adequately
    protect the interests of the class.

18  Fed. R. Civ. P. 23(a).  These requirements are more commonly

19  referred to as numerosity, commonality, typicality, and adequacy

20  of representation.

21       In its Preliminary Approval Order, the court found that

22  the class satisfied the numerosity, commonality, and typicality

23  requirements of Rule 23(a).  The court expressed some concern,

24  however, as to adequacy of representation.  Since the court is

25  unaware of any changes that would alter its analysis as to

26  numerosity, commonality, or typicality, the court will proceed to

27  evaluate adequacy of representation for purposes of final

28  certification.

1                              a. Adequacy of Representation

2              To resolve the question of adequacy, the court must

3  make two inquiries: "(1) do the named plaintiffs and their

4  counsel have any conflicts of interest with other class members

5  and (2) will the named plaintiffs and their counsel prosecute the

6  action vigorously on behalf of the class?"  Hanlon v. Chrysler

7  Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).  These questions

8  involve consideration of a number of factors, including "a

9  sharing of interests between representatives and absentees."

10 Brown v. Ticor Title Ins., 982 F.2d 386, 390 (9th Cir. 1992).

11             Although the Ninth Circuit has specifically approved

12 the award of "reasonable incentive payments" to named plaintiffs,

13 the use of an incentive award nonetheless raises the possibility

14 that plaintiffs' interest in receiving that award will cause

15 their interests to diverge from the class's interest in a fair

16 settlement.  Staton, 327 F.3d at 977-78 (declining to approve a

17 settlement agreement where size of incentive award suggested that

18 named plaintiffs were "more concerned with maximizing [their own]

19 incentives than with judging the adequacy of the settlement as it

20 applies to class members at large").  As a result, the court must

21 "scrutinize carefully the awards so that they do not undermine

22 the adequacy of the class representatives."  Radcliffe v.

23 Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

24             "In general, courts have found that $5,000 incentive

25 payments are reasonable."  Hopson v. Hanesbrands Inc., Civ. No.

26 08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)

27 (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th

28 Cir. 2000); In re SmithKline Beckman Corp., 751 F. Supp. 525, 535

                                     5

1   (E.D. Pa. 1990); <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652, 669 (E.D.

2   Cal. 2008)).

3        The settlement agreement provides for an incentive

4   award of $5,000 to each of the named plaintiffs, to be paid

5   separate from and in addition to the class recovery of $350,000

6   in vouchers.  In its Preliminary Approval Order, the court

7   questioned whether the incentive awards were proportionate to the

8   recovery of the other class members because, at the time of the

9   preliminary approval hearing, there was a possibility that all

10  200,000 class members would submit claim forms and each class

11  member would therefore receive only a $1.75 voucher.  However,

12  notice has now been sent to 200,000 class members and only 13,505

13  submitted timely claim forms.  (Pls.' Mot. for Final Approval

14  ("Pls.' Mot.") at 9 (Docket No. 18-1); <u>see</u> Settlement Agreement ¶

15  3.6.)  This means that each claimant will receive a voucher for

16  roughly $26.00--significantly more than the $1.75 originally

17  contemplated by the court.  (<u>Id.</u>)

18       In addition, plaintiffs provided important

19  justification for the incentive awards by explaining that class

20  representatives Heidi Anderson-Butler and Paula Haug spent around

21  forty hours engaging in investigation efforts, discovery, and

22  settlement negotiations for this case.  (Pls.'s Mot. for Att'y's

23  Fees at 12 (Docket No. 17-1).)  More specifically, Anderson-

24  Butler and Haug each spent around six hours discussing the matter

25  with plaintiffs' counsel and investigating other Charming Charlie

26  stores in the state; three hours working on filing the complaint;

27  fifteen hours on the mediation process; five hours on the

28  settlement agreement process; and two hours keeping abreast of

1  the settlement approval process.  (Anderson-Butler Decl. ¶¶ 2-8

2  (Docket No. 17-3); Haug Decl. ¶¶ 2-8 (Docket No. 17-4).)  Both

3  also stated that they bore the risk of an adverse judgment,

4  risking their own personal assets and credit.  (Id.)  Given this

5  new information, the court finds that the incentive awards are

6  proportional to the overall class recovery.

7               2. Rule 23(b)

8          An action that meets all the prerequisites of Rule

9  23(a) may be certified as a class action only if it also

10 satisfies the requirements of one of the three subdivisions of

11 Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

12 Cir. 2013).  Plaintiffs seek certification under Rule 23(b)(3),

13 which provides that a class action may be maintained only if (1)

14 "the court finds that questions of law or fact common to class

15 members predominate over questions affecting only individual

16 members" and (2) "that a class action is superior to other

17 available methods for fairly and efficiently adjudicating the

18 controversy."  Fed. R. Civ. P. 23(b)(3).

19         In its Preliminary Approval Order, the court found that

20 both prerequisites were satisfied.  The court is unaware of any

21 changes that would affect this conclusion.  Accordingly, since

22 the settlement class satisfied both Rule 23(a) and Rule 23(b)(3),

23 the court will grant final certification of the settlement class.

24    B.  Rule 23(e): Fairness, Adequacy, and Reasonableness of

25         Proposed Settlement

26         Having determined class treatment to be warranted, the

27 court must now determine whether the terms of the parties'

28 settlement appear fair, adequate, and reasonable.  See Fed. R.

7

1  Civ. P. 23(e)(2); <u>Hanlon</u>, 150 F.3d at 1026.  This process

2  requires the court to "balance a number of factors," including:

3          the strength of the plaintiff's case; the risk,
          expense, complexity, and likely duration of further
4          litigation; the risk of maintaining class action status
          throughout the trial; the amount offered in settlement;
5          the extent of discovery completed and the stage of the
          proceedings; the experience and views of counsel; the
6          presence of a governmental participant; and the
          reaction of the class members to the proposed
7          settlement.

8  <u>Hanlon</u>, 150 F.3d at 1026.

9
           1. <u>Terms of the Settlement Agreement</u>
10
    (1)  **Settlement Class:**  All persons who, between July 9, 2013
11
         and the date of entry of the Preliminary Approval Order,
12
         engaged in a credit card transaction at a California
13
         Charming Charlie Store and whose personal identification
14
         information was requested and recorded by Charming
15
         Charlie and the Charming Charlie Store for purposes other
16
         than shipping, delivery, or special orders.  (Pls.' Mot.
17
         at 2.)
18
    (2)  **Notice:**  The settlement administrator, Dahl
19
         Administration, LLC, mailed notices to 16,980 class
20
         members and emailed notices to 198,784 class members
21
         within thirty days of the court's granting preliminary
22
         approval.  (Kratz Decl. ¶¶ 2, 5-6 (Docket No. 18-3).)
23
         Notices were also mailed to 14,300 (of the 29,955) class
24
         members whose notice was not successfully delivered via
25
         email.  (<u>Id.</u> ¶¶ 6, 7.)
26
    (3)  **Opt-out Procedure:**  To opt out of the settlement, class
27
         members submitted by U.S. mail a letter or postcard
28
                                8

1    addressed to the Claims Administrator indicating (a) the

2    name and case number of the action; (b) the full name,

3    address, and telephone number of the person requesting

4    exclusion; and (c) a statement that he/she did not wish

5    to participate in the Settlement.  (Settlement Agreement

6    ¶ 3.10.)  Fifteen class members opted-out.  (Kratz Decl.

7    ¶¶ 9-10 (Docket No. 18-3).)

8    (4)    **Objections to Settlement**:  Class members could object to

9    the fairness, reasonableness, or adequacy of the

10    settlement by delivering written objections to

11    plaintiffs' counsel and defendant's counsel, and filing

12    such objection with the court, no later than forty-five

13    calendar days after the last day for notice to be

14    provided.  (Settlement Agreement ¶ 3.9.)  No class

15    members objected.  (Kratz Decl. ¶¶ 9-10.)

16    (5)    **Settlement Amount**:  Defendant agreed to comply with

17    section 1747.08 in its California stores, although the

18    agreement does not require defendant to notify plaintiffs

19    of changes to its policies, practices, and procedures.

20    In addition, defendant will pay $350,000 in the form of

21    transferable store vouchers to class members valid for

22    six months after issuance and redeemable for in-store

23    purchases of merchandise at Charming Charlie stores.

24    Class members who made claims will receive vouchers for

25    about $26.00.  Although the settlement agreement provided

26    for a limit of $20.00 per voucher with remainder vouchers

27    to be distributed to claimant class members if necessary,

28    defendant has agreed to distribute the entirety of the

9

1    voucher fund at once.  (Pls.' Mot. at 3.)

2    (6)  **Attorney's Fees, Costs, and Plaintiffs' Incentive Award:**

3    Plaintiffs request an award of attorney's fees and costs

4    of $140,000 total to be paid separate and apart from the

5    award to the class.  (Pls.' Mot. for Attorney's Fees at

6    1.)  Defendant does not oppose plaintiffs' counsel's

7    application.  (Id.)  Plaintiffs also request, and

8    defendant does not oppose, an incentive award of $5,000

9    to each of the named plaintiffs to be paid separate and

10   apart from the award to the class.  (Id. at 2.)

11   (7)  **Release:** Class members who participate in the settlement

12   who have not timely opted out agree to release defendant

13   from claims arising out of acts, omissions, or other

14   conduct that could have been alleged or otherwise

15   referred to in the action, including but not limited to

16   any and all violations of California Civil Code Section

17   1747.8.  (Settlement Agreement ¶ 4.4.)

18   2. Rule 23(e) Factors

19   a. Strength of the Plaintiffs' Case

20   An important consideration is the strength of the

21   plaintiffs' case on the merits balanced against the amount

22   offered in the settlement.  DIRECTV, 221 F.R.D. at 526.  The

23   district court, however, is not required to reach any ultimate

24   conclusions on the merits of the dispute, "for it is the very

25   uncertainty of outcome in litigation and avoidance of

26   wastefulness and expensive litigation that induce consensual

27   settlements."  Officers for Justice v. Civil Serv. Comm'n of the

28   City & Cty. of SF, 688 F.2d 615, 625 (9th Cir. 2004).

1    Plaintiffs allege defendant violated California Civil

2  Code section 1747.08 by requesting and recording customers'

3  personal identification information as part of its credit card

4  transactions. (Pls.' Mot. at 5.)  The parties have exchanged

5  significant informal discovery and plaintiffs believe they have

6  sufficient evidence to establish their prima facie case. (Id. at

7  8.)  On the other hand, defendant avers that it never conditioned

8  a sale upon the customer providing personal identification

9  information and such information was requested only for the

10  purpose of enrolling customers in a loyalty club. (Def.'s

11  Statement of Non-Opp'n ("Def.'s Stmt.") at 7 (Docket No. 19).)

12  Defendant argues that requesting personal identification

13  information for the purpose of enrolling customers in a loyalty

14  program falls within the "special purposes" exception to section

15  1747.08. (Id. at 8.)  Plaintiffs counter that the loyalty club

16  was not mentioned at the time they were requested to provide

17  identification information. (Pls.' Mot. at 6.)  The settlement

18  terms compare favorably to these uncertainties with respect to

19  liability.

20    Even if plaintiffs prevailed at trial, there is a

21  significant possibility that plaintiffs would receive only

22  minimal damages. California Civil Code section 1747.08 provides

23  a safe harbor for bona fide errors made unintentionally and also

24  does not mandate fixed or minimum penalties. (Def.'s Stmt. at 8,

25  11.)  While each class member could recover $250 in damages for

26  the first violation and up to $1,000 for each subsequent

27  violation, it is also possible each member would receive as

28  little as a penny. (Id. at 11; Pls.' Mot. at 7.)  This is

11

1   especially true given that there is no evidence that any class

2   member was financially harmed by defendant's practice.  (Id.)

3          The proposed settlement provides broad injunctive

4   relief requiring defendant to comply with section 1747.08 in its

5   California stores and provides each claimant with a $26.00

6   voucher.  In comparing the strength of plaintiffs' case with the

7   proposed settlement, the court finds that the proposed settlement

8   is a fair resolution of the issues in this case.

9                    b. Risk, Expense, Complexity, and Likely Duration

10                       of Further Litigation

11         Further litigation could greatly delay resolution of

12  this case and increase expenses.  Prior to any judgment, the

13  parties will likely litigate class certification, summary

14  judgment, and a bench trial.  In addition, defendant contends

15  that appellate proceedings would almost certainly follow.

16  (Def.'s Stmt. at 9.)  This weighs in favor of settlement of the

17  action.

18                    c. Risk of Maintaining Class Action Status

19                       Throughout Trial

20         Defendant argues that plaintiffs would not be able to

21  maintain this case as a class action "because the varied

22  circumstances surrounding each customer's transactions present

23  individualized factual issues that cannot be jointly tried."

24  (Def.'s Stmt. at 7.)  Plaintiff also acknowledges that "class

25  certification is not guaranteed, if opposed" and cites to a

26  recent class action under section 1747.08 that was decertified at

27  trial.  (Pls.' Mot. at 8.)  Accordingly, this factor also favors

28  approval of the settlement.

1                         d. Amount Offered in Settlement

2              In assessing the amount offered in settlement, "[i]t is

3     the complete package taken as a whole, rather than the individual

4     component parts, that must be examined for overall fairness."

5     Officers for Justice, 688 F.2d at 628.  "It is well-settled law

6     that a cash settlement amounting to only a fraction of the

7     potential recovery will not per se render the settlement

8     inadequate or unfair."  Id.

9              The value of the settlement fund in this case is

10    $350,000.  (Pls.' Mot. ¶ 9.)  As of the time of the fairness

11    hearing, 13,505 members had opted into the class and, as a

12    result, each claimant will receive a voucher for roughly $26.00.

13    (Id.)  The attorney's fees and incentive awards will be paid

14    separate and apart from class compensation and will not detract

15    from the settlement fund.  (Pls.'s Mot. for Att'y's Fees at 1.)

16    The transferable voucher will not require claimants to spend any

17    money in order to realize the benefits of the settlement, as a

18    coupon would.  (Def.'s Stmt. at 10.)

19             Plaintiffs' counsel believes that "recovery would most

20    likely be in a similar amount if the action was tried with the

21    facts as known."  (Pls.' Mot. at 9.)  While section 1747.08

22    provides for a maximum award of $250 for the first violation and

23    $1,000 for each subsequent violation, plaintiffs concede that

24    defendant did not commit an egregious violation that would

25    warrant the maximum allowable penalty.  (Id. at 10.)  Instead,

26    plaintiffs analogize defendant's violation to that of a first-

27    time corporate offender that collected minimally-sensitive

28    information and estimate that the case is worth less than

                                     13

1    $500,000.  (Id.)  Class members' actual recovery, therefore,

2    appears at least comparable to the amount they would recover at

3    trial and is particularly fair and reasonable in light of the

4    risks and costs of further litigation in this case.

5                    e. Extent of Discovery and the State of Proceedings

6              A settlement that occurs in an advanced stage of the

7    proceeding indicates the parties carefully investigated the

8    claims before reaching a resolution.  Alberto v. GMRI, Inc., Civ.

9    No. 07-1895 WBS DAD, 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12,

10   2008.)  Plaintiffs served formal written discovery on defendant

11   and both parties exchanged significant informal discovery in

12   preparation for mediation.  (Pls.' Mot. at 8.)  Among other

13   information, defendant has provided plaintiffs with information

14   relating to the total number of transactions completed in

15   California during the relevant time period, the number of times

16   personal identification information was requested, the

17   utilization and storage of such information, and the production

18   of its policy directives.  (Id.)  The parties also engaged in a

19   full day of mediation before the Honorable William C. Pate

20   (retired) in San Diego and several communications following the

21   mediation with his assistance.  (Id. at 2.)  The parties'

22   investigation of the claims through informal discovery and

23   mediation and their consideration of the views of a third-party

24   mediator weigh in favor of settlement.

25                      f. Experience and Views of Counsel

26              Plaintiffs' counsel indicates that he has extensive

27   experience litigating consumer class actions.  In the past ten

28   years, he has brought more than twenty class actions under the

1   Song–Beverly Credit Card Act of 1971.  (Id. at 10.)  Based on his

2   experience, counsel believes the proposed settlement is fair and

3   adequate to the class members.  (Id.)  The court gives

4   considerable weight to class counsel's opinions regarding the

5   settlement due to counsel's experience and familiarity with the

6   litigation.  Alberto, 2008 WL 4891201, at *10.  This factor

7   supports approval of the settlement agreement.

8                   g. Presence of Government Participant

9          No governmental entity participated in this matter;

10  this factor, therefore, is irrelevant to the court's analysis.

11                  h. Reaction of the Class Members to the Proposed

12                      Settlement

13         The settlement administrator, Dahl Administration, LLC,

14  mailed notices to approximately 200,000 class members.  (Kratz

15  Decl. ¶¶ 2, 5-7.)  Fifteen class members requested to be excluded

16  and none objected.  (Id. ¶¶ 9-10.)  "It is established that the

17  absence of a large number of objections to a proposed class

18  action settlement raises a strong presumption that the terms of a

19  proposed class settlement action are favorable to the class

20  members."  DIRECTV, 221 F.R.D. at 529.  Accordingly, this factor

21  weighs in favor of the court's approval of the settlement.

22         Having considered the foregoing factors, the court

23  finds the settlement is fair, adequate, and reasonable pursuant

24  to Rule 23(e).

25      C. Attorney's Fees

26         Federal Rule of Civil Procedure 23(h) provides, "[i]n a

27  certified class action, the court may award reasonable attorney's

28  fees and nontaxable costs that are authorized by law or by the

1  parties' agreement."  If a negotiated class action settlement

2  includes an award of attorney's fees, that fee award must be

3  evaluated in the overall context of the settlement.  Knisley v.

4  Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio

5  v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013)

6  (England, J.).  The court "ha[s] an independent obligation to

7  ensure that the award, like the settlement itself, is reasonable,

8  even if the parties have already agreed to an amount."  In re

9  Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th

10 Cir. 2011).

11      The parties agreed as part of the settlement agreement

12 that defendant would pay attorney's fees and costs of $140,000,

13 to be paid separate and apart from the recovery of the class.

14 (Pls.' Mot. for Att'y's Fees at 2; Settlement Agreement ¶ 2.5.)

15 Of this sum, plaintiffs' counsel explains that $9,118.43 is for

16 costs and $130,881.57 for attorney's fees.  (Id.)  Plaintiffs'

17 counsel submitted a declaration in support of his requested fees

18 providing a general breakdown of his hours worked; he did not

19 attach detailed time sheets because the motion is not opposed by

20 defendant and plaintiffs' counsel hoped "to avoid public

21 disclosure of privileged matters and work product."  (Lindsay

22 Decl. in Support of Pls.' Mot. for Att'y's Fees ("Lindsay Decl.")

23 ¶ 8 (Docket No. 17-2).)

24      The parties negotiated the agreed-upon attorney's fees

25 and costs only after reaching an agreement as to all other

26 material terms of the settlement, including class compensation.

27 (Pls.' Mot. for Att'y's Fees at 3; Lindsay Decl. ¶ 7.)  In

28 negotiating the fee award, the parties took into account

1    plaintiffs' counsel's efforts, the results achieved, and the risk

2    of protracted litigation if no agreement on attorney's fees was

3    reached.  (Id. at 3.)

4          While plaintiffs' counsel's substantial hourly rate

5    might not have been accepted by the court under different

6    circumstances, the court finds plaintiffs' counsel request for

7    attorney's fees and costs in the agreed-upon amount of $140,000

8    fair, appropriate, and reasonable given that it was negotiated

9    independently from the class settlement, defendant does not

10   oppose, and it did not detract from the amount class members will

11   recover.

12         D. Incentive Payments to Named Plaintiffs

13         For the reasons previously discussed, see supra Part

14   II.A.1.a, the court orders that incentive payments of $5,000 be

15   paid to each named plaintiff.

16   III. Conclusion

17         Based on the foregoing, the court grants final

18   certification of the settlement class and approves the settlement

19   set forth in the settlement agreement as fair, reasonable, and

20   adequate.  Consummation of the settlement agreement is therefore

21   approved, and the definitions provided in the settlement

22   agreement shall apply to the terms used herein.  The settlement

23   agreement shall be binding upon all members of the class action

24   who did not timely elect to be excluded.

25         IT IS THEREFORE ORDERED that plaintiffs' motion for

26   final approval of the class and class action settlement be, and

27   the same hereby is, GRANTED.

28         IT IS FURTHER ORDERED THAT:

17

1    (1)   solely for the purpose of this settlement, and pursuant

2          to Federal Rule of Civil Procedure 23, the court hereby

3          certifies the following class: All persons who, between

4          July 9, 2013 and the date of entry of the Preliminary

5          Approval Order, engaged in a credit card transaction at a

6          California Charming Charlie Store and whose personal

7          identification information was requested and recorded by

8          Charming Charlie and the Charming Charlie Store for

9          purposes other than shipping, delivery, or special

10         orders.  Specifically, the court finds that:

11    (a)   the settlement class members are so numerous that

12              joinder of all settlement class members would be

13              impracticable;

14    (b)   there are questions of law and fact common to the

15              settlement class which predominate over any

16              individual questions;

17    (c)   claims of the named plaintiffs are typical of the

18              claims of the settlement class;

19    (d)   the named plaintiffs and plaintiffs' counsel have

20              fairly and adequately represented and protected the

21              interests of the settlement class; and

22    (e)   a class action is superior to other available

23              methods for the fair and efficient adjudication of

24              the controversy.

25    (2)   the court appoints the named plaintiffs, Heidi Anderson-

26          Butler and Paula Haug, as representatives of the class

27          and finds that they meet the requirements of Rule 23;

28    (3)   the court appoints James M. Lindsay of Lindsay Law

1    Corporation, 21 Natoma Street, Suite 160, Folsom,

2    California 95630, as counsel to the settlement class and

3    finds that counsel meets the requirements of Rule 23;

4  (4)  the settlement agreement's plan for class notice is the

5    best notice practicable under the circumstances and

6    satisfies the requirements of due process and Rule 23.

7    The plan is approved and adopted.  The notice to the

8    class complies with Rule 23(c)(2) and Rule 23(e) and is

9    approved and adopted;

10  (5)  the parties have executed the notice plan in the court's

11    Preliminary Approval Order, in response to which 13,505

12    class members submitted a claim form, fifteen requested

13    to be excluded, and none objected.  Having found that the

14    parties and their counsel took extensive efforts to

15    locate and inform all putative class members of the

16    settlement, and given that no class members have filed

17    any objections to the settlement, the court finds and

18    orders that no additional notice to the class is

19    necessary;

20  (6)  as of the date of the entry of this Order, plaintiffs and

21    all class members who have not timely opted out hereby do

22    and shall be deemed to have fully, finally, and forever

23    released, settled, compromised, relinquished, and

24    discharged any and all of the released parties (as

25    defined by paragraph 4.4 of the settlement agreement) of

26    and from any and all released claims (as defined in

27    paragraph 4.4 of the settlement agreement).  The claims

28    released by plaintiffs and class members include, but are

19

1        not limited to, claims arising from any and all

2        violations of California Civil Code section 1747.8;

3    (7)  the distribution of settlement vouchers shall occur

4        within thirty calendar days following the final

5        settlement date.  Defendant will itself or through the

6        claims administrator mail the vouchers;

7    (8)  plaintiffs' counsel is entitled to fees and costs in the

8        amount of $140,000 and payment shall be made within ten

9        days after the final settlement date and plaintiffs'

10       counsel provides defendant with its Form W-9, whichever

11       is later;

12   (9)  the named plaintiffs are entitled to incentive payments

13       of $5,000 each; and

14   (10) this action is dismissed with prejudice; however, without

15       affecting the finality of this Order, the court shall

16       retain continuing jurisdiction over the interpretation,

17       implementation, and enforcement of the settlement

18       agreement with respect to all parties to this action and

19       their counsel of record.

20  The clerk is instructed to enter judgment accordingly.

21  Dated:   November 3, 2015

22

23                              WILLIAM B. SHUBB
                                UNITED STATES DISTRICT JUDGE

24

25

26

27

28